

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-2008

# Mufulu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3044

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Mufulu v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1045.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1045

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3044
_____

GILONDA KINGAMBO MUFULU,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A73 569 669)
Immigration Judge:  Honorable Donald Ferlise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 4, 2008
Before: FUENTES, ALDISERT and GARTH, Circuit Judges

(Opinion filed    June 6, 2008 )
_____

OPINION
_____

PER CURIAM

Gilonda Mufulu petitions for review of a Board of Immigration Appeals ("BIA")

decision dismissing his appeal of the Immigration Judge's ("IJ") decision denying his

applications for relief from removal.  We will deny the petition for review.

Mufulu is a native and citizen of Zaire, now the Democratic Republic of Congo.

He entered the United States in 1990 as a temporary worker. In 1995, the Immigration and Naturalization Service issued an order to show cause charging that Mufulu was subject to deportation because he stayed here longer than permitted. Mufulu conceded that he was deportable as charged, and applied for asylum and withholding of removal.

This case has a lengthy procedural history. In 1996, the IJ denied Mufulu's applications for relief from removal. The IJ found Mufulu's testimony implausible and inconsistent, and concluded that he intentionally lied to the court to obtain an immigration benefit. Mufulu appealed, and then moved to remand his case so that the IJ could consider an adjustment of status application based on an approved employment certification. The BIA remanded the case, but Mufulu did not appear for the hearing. In April 2002, the IJ pretermitted the application for lack of prosecution, and reinstated the deportation order.

The proceedings were later reopened because Mufulu did not have notice of the hearing on the adjustment of status application. In September 2002, the IJ held a hearing, and determined that Mufulu needed a waiver in order to adjust his status because of the finding that he had lied to the court. The IJ decided that Mufulu did not have the requisite familial relationships in the United States to obtain a waiver. The IJ pretermitted the adjustment of status application, and remanded the case to the BIA to decide Mufulu's appeal of the denial of asylum and withholding of deportation.

The BIA dismissed Mufulu's appeal, erroneously believing that he was appealing the IJ's April 2002 decision ordering his deportation after he failed to appear. We

granted Mufulu's petition for review and remanded the case to the BIA to consider his appeal of the September 2002 order. On remand, the BIA decided that the record supported the IJ's 1996 finding that Mufulu provided false testimony, and that Mufulu was statutorily ineligible for an adjustment of status. This petition for review followed.

In support of his asylum claim, Mufulu testified that he worked as a teacher until the Mobutu government forced him to stop teaching. Mufulu was a union leader. He stated that he was imprisoned for three months in 1977 because he tried to get teachers a raise. Mufulu further testified that, after he stopped teaching, he joined a dance troupe that performed throughout Africa, and he wrote and performed a song that became the song of opposition to the Mobutu regime. Mufulu testified that he was imprisoned for three months in 1988 and three months in 1989 because of the song. He stated that his wife died of a heart attack on one visit by police to his home, and that the police shot his son after he left Zaire. Mufulu believed that he would be killed if he returned to Zaire.

Mufulu argues that he was denied due process because he did not have an interpreter at his hearing. In rejecting this argument, the BIA correctly noted that Mufulu stated at his first hearing that he spoke and understood English, and that he did not need an interpreter. Mufulu's lawyer agreed. At his next hearing, Mufulu, represented by a different lawyer, again stated that he spoke and understood English. Mufulu's lawyer confirmed that an interpreter was not requested, but told the IJ, "I see every now and then [Mufulu] could have used [an interpreter]." App. at 104. When asked if the case could proceed, his lawyer stated, "Yeah, I think we can go forward if you can bear with him.

For the most part, he understands and speaks very well." App. at 104. His lawyer stated that an interpreter would not be a basis for an appeal.

Mufulu concedes that he did not request an interpreter, but argues that the IJ had a duty to provide one when it became apparent that he was having trouble communicating in English. The administrative record, however, reflects that Mufulu had little difficulty answering the questions that his lawyer and the IJ posed on direct examination. The BIA correctly noted that there were no questions about Mufulu's ability to understand the proceedings until inconsistencies in his testimony came out on cross-examination.[1] Mufulu then stated that he may have confused a date in English. He also stated that he was confused during a discussion about when he signed or received papers related to his arrest. The IJ asked Mufulu to recite the months of the year, apparently to make sure that he was not confusing them, and Mufulu did so correctly. We agree with the BIA that Mufulu's confusion during cross-examination did not necessarily reflect a language barrier. Neither Mufulu nor his lawyer stated that Mufulu was having difficulty understanding the proceedings or that he needed an interpreter. Many of the excerpts from the record relied upon by Mufulu reflect attempts to clarify the record, not an inability to communicate in English.

Mufulu also argues that the IJ's adverse credibility determination was based, in part, on the IJ's own bias. We have criticized the conduct of the IJ who presided over

---

[1]Mufulu did state on direct examination that he did not understand a question that the IJ asked about the illnesses that people had in prison, but when rephrased, Mufulu answered the question. App. at 141.

Mufulu's hearing in other cases. See, e.g., Fiadjoe v. Attorney General, 411 F.3d 135, 142-46 (3d Cir. 2005). However, the administrative record in this case does not reflect conduct that in itself requires that we reject the IJ's credibility finding. We recognize that, like in Fiadjoe, the IJ asked Mufulu if he was sleeping when he rendered his decision, and that the IJ told Mufulu that he thought he was lying. But, unlike in Fiadjoe, the record does not reflect that the IJ was hostile or abusive during the presentation of Mufulu's case.[2]

Mufulu further argues that his testimony was credible and established that he suffered past persecution. The BIA concluded that the record supported the IJ's finding that Mufulu provided false testimony. The BIA explained that Mufulu presented conflicting testimony regarding when he was arrested in 1989, when authorities took away his academic documents, and the circumstances surrounding when he was stabbed in the foot. The BIA also stated that the IJ reasonably found it implausible that Mufulu was held for three months for composing and singing an anti-government song, but was then allowed to leave Zaire to travel with a dance troupe. The BIA noted that Mufulu's release order stated that he was not allowed to leave the city or go to any airport, train station, or port, and that Mufulu's explanation – that the troupe's president's brother worked for the government and got him a visa – was implausible. The BIA also found

---

[2]The IJ made a sarcastic remark when Mufulu testified that President Mobuto had heard people singing the song that he wrote. The IJ commented, "Maybe [Mobutu] would have like an autographed copy [of his tape]." App. at 160. We do not condone this remark, but we find it insufficient to establish bias on the IJ's part.

Mufulu's testimony that he was forced to go without food or water for three weeks implausible. The administrative record supports the inconsistencies cited by the BIA. We can not conclude that "any reasonable adjudicator would be compelled to conclude" that Mufulu was credible or did not provide false testimony. See Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004) (setting forth substantial evidence standard of review).

Finally, Mufulu argues that the BIA erred in deciding that the IJ's finding of false testimony could form the basis for the denial of his adjustment of status application. We disagree. An alien is ineligible for adjustment of status if he is inadmissible for permanent residence. 8 U.S.C. § 1255(a)(2). An alien who wilfully misrepresents a material fact in order to gain asylum is inadmissible. Id. § 1182(a)(6)(C). Because the BIA correctly concluded that the record supports the IJ's finding of false testimony, the BIA did not err in finding Mufulu ineligible for adjustment of status. See Falaja v. Gonzales, 418 F.3d 889, 898-99 (8th Cir. 2005) (holding that an alien who wilfully misrepresented material facts in an attempt to gain asylum was inadmissible and ineligible for adjustment of status).[3]

Accordingly, we will deny the petition for review.

---

[3]Korytnyuk v. Ashcroft, 396 F.3d 272 (3d Cir. 2005), relied upon by Mufulu, is distinguishable. We held that the BIA erred in denying an alien's motion to remand to apply for adjustment of status based on a finding that the alien had engaged in criminal activities where that finding was not supported by substantial evidence.